# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | CA 09-621-KD-C |
| A J B, Limited Liability Company, also known as AJB, LLC; and, ADRIAN J. BEACH | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on Defendants AJB, LLC, and Adrian J. Beach's Motion to Dismiss Count II and/or Motion on the Pleadings as to Count II (Doc. 38), and brief in support thereof (Doc. 39) (the "Motion"), both filed July 27, 2010, and United States Response to Defendants' Motion to Dismiss or Judgment on the Pleadings as to Count Two of the Complaint (Doc. 42) (the "Response"), filed August 16, 2010.[1] After consideration of the Motion, it is the undersigned's recommendation that it be **DENIED**.

---

[1] Defendants were given "until August 23, 2010 to reply to any response thus presented" (Doc. 41), but no reply was filed on that date. On September 1, 2010, Defendants filed a Motion to File Rebuttal Out of Time (Doc. 43), to which they attached the Rebuttal Brief of AJB, LLC, and Adrian J. Beach (Doc. 43-1) (the "Reply"). The Court has granted their motion and considered the Reply. However, the Reply does not alter the undersigned's recommendation that the Motion be denied.

**FINDINGS OF FACT**

1. Count Two of the First Amended Complaint (Doc. 12), the subject of Defendants' Motion, states a cause of action for false claims against the United States in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733. The applicable factual background set forth below relates only to that cause of action.

2. In August 1997, the United States Department of Agriculture (USDA), Rural Development acquired a mortgage lien on Property Located at Lot 49, Magnolia Estates, Baldwin County, Alabama ("Lot 49") as security for a debt. (Doc. 12, ¶ 6.) The USDA's mortgage lien was junior to the first mortgage lien of Alcor Mortgage Corporation by agreement of the parties pursuant to the USDA's "leverage loan program." (*Id.*) In May 2009, Chase Manhattan Mortgage Corporation—successor mortgagee to Alcor—held a foreclosure sale of Lot 49. (*Id.*, ¶ 7.) Defendant Adrian J. Beach ("Beach") for himself or for Defendant AJB, LLC ("AJB") purchased Lot 49 at that sale for $32,000. (*Id.*)

3. As the junior mortgagee on Lot 49, the United States has a right to redeem from the foreclosure sale pursuant to Section 6-5-248(a)(3), Alabama Code. (*See id.*, ¶ 8.) The USDA's Office of General Counsel ("OGC"), accordingly, wrote to Defendants on July 30, 2009: "demand is hereby made pursuant to Ala. Code § 6-5-252 for a statement in writing of the debt (purchase price and interest) and an itemized statement of all lawful charges you claim as the purchaser." (*Id.*, ¶ 9 & Ex. A.) Beach responded "[o]n behalf of AJB" by letter dated August 11, 2009, which letter "include[ed] a detailed

list of all lawful charges [the United States] needs to tender for redemption." (*Id.*, Ex. C.) "Value of improvements (attached details Exhibit A)," claimed to be $55,000, was one such "lawful charge" asserted. (*Id.*) The OGC replied to Beach by letter dated August 19, 2009, "disput[ing] the $55,000 value of improvements [to] the subject property." (*Id.*, Ex. D.)

      4.     The United States, in Count II of its First Amended Complaint, contends that Defendants' August 11, 2009 letter and attachment thereto (the "August 11, 2009 Letter") contain "false claims against the United States in violation of 31 U.S.C. § 3729, as amended (False Claims Act)." (*Id.*, ¶ 23.) Specifically, the United States contends that the "the amount claimed against the United States in Paragraph 3" of the August 11, 2009 Letter—"Value of improvements (attached details Exhibit A) $55,000"—is false (*id.*, ¶ 24) because the "[t]he true value of the 'improvements,' if any were made by Defendants or either of them, is far less than the amount claimed by Defendants," and moreover, "Defendants knew the true value of its claimed 'improvements,' if any, was far less than $55,000, when they presented their claim and demand to the United States." (*Id.*, ¶ 25.) The United States further contends that "[o]n other occasions Defendants have conducted a pattern and practice of falsely inflating the 'Value of Improvements' against other persons, private and against the United States government, who were seeking to redeem real property which Defendants purchased at foreclosure sales." (*Id.*, ¶ 26.)

## **CONCLUSIONS OF LAW**

1. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

2. Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, ___ U.S. ____, 129 S. Ct. 1937, 1949 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

4

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief.

*Id.* at 1949-50 (internal citations and quotation marks omitted); *see also id.* at 1950-51 (a plaintiff must nudge his claims "'across the line from conceivable to plausible'").

3. As a preliminary matter, the Court must consider whether the Motion—asserted as both a motion to dismiss and a motion on the pleadings—is applicable to Defendant Beach, who filed an answer (Doc. 26) to the complaint on June 1, 2010, asserting the affirmative defense that the United States "failed to state a claim for which relief can be granted." (*Id.*, p 2.) Because Beach answered the complaint, he cannot now benefit from a separate, later-filed motion to dismiss under Rule 12(b)(6).

5

*See, e.g., O'Hagan v. M & T Marine Group, LLC*, No. 06-61635-CIV, 2010 WL 503118, at *1 (S.D. Fla. Feb. 8, 2010) ("If an answer includes an affirmative defense of failure to state a claim for relief, a subsequent 12(b)(6) motion is null." (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1096 n.46 (11th Cir. 2001))). The Court of course "may construe [a] motion to dismiss as a motion for judgment on the pleadings filed pursuant to Fed. R. Civ. P. 12(c)." *Id.* (citing *Byrne*, 261 F.3d at 1096 n.46). But, as the United States correctly points out (Doc. 42, p. 4), the pleadings in this case are not closed. (*See, e.g.,* Doc. 36, Suppl. Rule 16(b) Scheduling Order, ¶ 12 (noting that the deadline for dispositive motions is December 10, 2010).) As such, the Court can only consider the Motion as it applies to Defendant AJB.

4. The False Claims Act is broad in scope. *See United States ex rel. Loughren v. Unum Group*, ___ F.3d ____, 2010 WL 2951175, at *5 (1st Cir. July 29, 2010) ("The FCA 'covers all fraudulent attempts to cause the government to pay out sums of money.'" (quoting *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008))); *United States v. Govereh*, No. 1:07-CR-131-JEC, 2010 WL 28565, at *2 (N.D. Ga. Jan 05, 2010) (same) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968)). The FCA was made even broader by its 2009 amendments. *See* S. REP. NO. 111-10, at 10 (2009) (noting that the FCA is "[o]ne of the most successful tools for combating waste and abuse in Government spending," the "effectiveness" of which "has recently been undermined by court decisions limiting the scope of the law").

5. Although the United States does not specify which subsection(s) of the

FCA it contends Defendants violated, it appears to the undersigned that at the very least, the United States contends that Defendants violated Subsection (a)(1)(A), under which it must prove that Defendants "knowingly present[ed] or cause[d] to be presented a false or fraudulent claim for payment or approval," and Subsection (a)(1)(B), under which it must prove that Defendants "knowingly [made], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim."[2] 31 U.S.C. §§ 3729(a)(1)(A)-(B); *see, e.g., United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 685 F. Supp. 2d 129, 139-40 (D.D.C. 2010) (court analyzed asserted violation of § 3729(a)(1)(B), noting that "Congress intended for the amended provision to eliminate any intent requirement, S. Rep. No. 111-10 (2009), and instead for liability to attach when a record or statement has 'a natural tendency to influence' or 'is capable of influencing[ ] the payment or receipt of money or property' (quoting 31 U.S.C. § 3729(b)(4)), and found that where "[t]he government alleges that [defendant] knowingly misrepresented and concealed facts, creating a false record that in part caused [contractor] to submit a false claim to the government[, it] more than satisfies the materiality requirement").

6. Some courts, examining the FCA prior to its 2009 amendments, have used the construct of "factually false" versus "legally false" claims; that is: "The FCA recognizes two types of actionable claims—factually false claims and legally false

---

[2] *See United States ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, Civil Action No. 5:07-CV-76(HL), 2010 WL 146877, at *4 (M.D. Ga. Jan. 11, 2010) (analyzing—and denying, in

claims," *Conner*, 543 F.3d at 1217; this construct is still applicable and helpful to analyzing claims under the statute as amended. "In a run-of-the-mill 'factually false' case," such as this one, "proving falsehood is relatively straightforward: [Plaintiff] must generally show that the government payee has submitted 'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001).

7. Defendants' motion asserts two theories as to why statements in the August 11, 2009 Letter are not actionable under the FCA. (*See* Doc. 39, pp. 5-9.) The undersigned rejects both theories and finds that the United States has successfully plead a violation of the FCA.

8. *First*, Defendants contend that the August 11, 2009 Letter was a statutorily required response to a redemption demand made under Section 6-5-252, Alabama Code, and thus cannot be a claim. (*Id.*, pp. 5-7). That section, in pertinent part, requires "[a]nyone desiring and entitled to redeem [to] make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her" (ALA. CODE § 6-5-252 (1975)), which the United States did via its July 30, 2009 Letter. The purchaser—Defendants here—must then "within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her" or "he or she shall forfeit all claims or right to compensation for improvements." (*Id.*) Defendants thus contend that

---

part—12(b)(6) motion to dismiss FCA cause of action asserted under an unspecified subsection).

statements in their August 11, 2009 Letter are not claims, but "a response by AJB to a solicitation by USDA for an offer on the value of the property and was not an attempt by AJB to demand money, but a statutorily required response which it must send to the requester . . . [or] lose the value of any improvements made to the real property (regardless whether the improvements are in dispute or not)."  (Doc. 39, p. 6.)

        9.     The term "claim," under the Act as amended in 2009, includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that is presented to an officer, employee, or agent of the United States."  31 U.S.C. § 3729(b)(2)(A)(i).  Even before the 2009 amendments,

> the Supreme Court . . . determined that the FCA and the term "any claim" must be construed liberally to effect the FCA's broad purpose of protecting the government treasury from fraudulent claims.  *Hubbard v. United States*, 514 U.S. 695, 703 n.5, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995).  Furthermore, the FCA punishes the mere submission of fraudulent claims for payment, regardless of whether the Government pays them.  *United States v. Coachman*, 727 F.2d 1293, 1302 (D.C. Cir. 1984) ("there is no requirement that the claim has actually been honored") (citations omitted).

*Govereh*, 2010 WL 28565, at *2.  A "claim" under the FCA does not have to be an immediately actionable demand.  When, for example, "the government insures a mortgage loan via the FHA, it does not pay out money at that point; indeed, it does not pay out money unless and until a demand is made on the FHA insurance.  But an application for FHA insurance nonetheless constitutes a claim within the meaning of the FCA."  *United States v. Anchor Mortgage Corp.*, No. 06 C 210, 2010 WL 3184210, at *5

9

(N.D. Ill. Aug. 11, 2010) (citations omitted). *Bridges v. Omega World Travel, Inc.*, No. 4:07cv01060 BSM, 2009 WL 5174283 (E.D. Ark. Dec. 18, 2009), is another telling example of the expansive view of the term claim. There, a travel agency's ***unsuccessful attempts*** to charge the United States a higher price for airfare, in violation of a contract, were enough to successfully plead a violation of the FCA. *See id.*, at *4-*5. In *Bridges*, the court stated,

> Although, on its face, it is quite logical to reason that a claim was never made because the government was never actually billed the higher fare price, this reasoning does not seem to make practical sense. Omega's logic would in essence require dismissal of Bridges's claim unless he passively participated in Omega's alleged fraud, by knowingly accepting the fraudulently booked ticket and waiting for the government to be billed. Neither Bridges, who is an FBI agent, nor any other government employee should have to sit back and permit fraud to be perpetrated on the government in order to have a claim under the FCA. Neither the FCA, nor Supreme Court precedent, seems to support this position.

*Id.* at *5.

10. In light of this case law, and accepting as true all of the factual allegations set forth in the complaint, as we must, the Court rejects the Defendants' argument that the August 11, 2009 Letter is not a claim because it was merely a statutorily required response to a redemption demand. While Defendants claim that the August 11, 2009 Letter did "not seek[ ] payment from the government" and that the "USDA rejected the valuation [asserted in that letter] out of hand and never tendered any monies to AJB" (Doc. 39, pp. 6-7), the United States, in its July 30, 2009 Letter, did "demand . . . an itemized statement of all lawful charges" Defendants claim (Doc. 12, ¶ 9 & Ex. A), to

which the Defendants responded with "a detailed list of all lawful charges [the United States] *needs* to tender for redemption." (*Id.*, Ex. C (emphasis added).) As demonstrated above, to qualify as a "claim" under the FCA, the August 11, 2009 Letter need not directly seek payment from the USDA, *see Anchor Mortgage Corp.*, 2010 WL 3184210, at *5, nor must the USDA tender payment to Defendants. *See Coachman*, 727 F.2d at 1302 ("there is no requirement that the claim has actually been honored"); *Bridges*, 2009 WL 5174283, at *5. Simply put, the August 11, 2009 Letter was at least a "request" for the amount the USDA needed "to tender for redemption" of Lot 49 that was "presented to an . . . employee . . . of the United States." And much like FBI Agent Bridges, the OGC was not required "to sit back and permit fraud to be perpetrated on the government" (*Bridges*, 2009 WL 5174283, at *5)—by continuing to deal with Defendants through Alabama's statutory non-judicial foreclosure process—before there is a claim under the FCA. As such, under the liberal construction afforded to the FCA and the term "any claim," *see, e.g., Govereh*, 2010 WL 28565, at *2, the August 11, 2009 Letter is a claim, actionable under the FCA, for purposes of the Motion.

11. *Second*, Defendants contend that the "Value of improvements (attached details Exhibit A) [listed at] $55,000" in paragraph three of the August 11, 2009 Letter is merely an opinion of value, and thus not actionable. (*Id.*, pp. 7-9.)

12. The FCA requires proof of an objective falsehood. *United States v. Boeing*, 100 F. Supp. 2d 619, 625-26 (S.D. Ohio 2000). That is, "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable

minds may differ cannot be false." *Id.* at 625-26 (citing *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992) ("Bad math is no fraud, proof of mistake is not evidence that one is a cheat, and the common failings of engineers and other scientists are not culpable under the Act."); *Tyger Constr. Co. v. United States*, 28 Fed. Cl. 35, 57 (1993) (noting that FCA liability will not attach for a statement relating to a contract term that is incapable of a precise definition, and fraud cannot be predicated on the mere expression of an opinion); *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 808 (D. Utah 1988) (finding that the FCA requires a statement of fact that can be said to be either true or false)).

13. "However, an opinion or estimate carries with it 'an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) (quoting W. PAGE KEETON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 109, at 760 (5th ed. 1984)). Here, the United States has alleged—and we accept as true for purposes of the Motion—that "'Value of improvements (attached details Exhibit A) $55,000' is false" (Doc. 12, ¶ 24), "[t]he true value of the 'improvements,' if any were made by Defendants or either of them, is far less than the amount claimed by Defendants" (*id.*, ¶ 25), and "Defendants knew the true value of its claimed 'improvements,' if any, was far less than $55,000, when they presented their claim and demand to the United States." (*Id.*, ¶ 25.) These allegations are sufficient to defeat Defendants' "opinion" argument. *See United States ex rel. Siewick v.*

12

*Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1378 (D.C. Cir. 2000) (quoting *Harrison*: "a faulty estimate or opinion can qualify as a false statement where the speaker knows facts 'which would ***preclude*** such an opinion'" (emphasis in original)); *United States v. United Tech. Corp.*, 255 F. Supp. 2d 779, 782-83 (S.D. Ohio 2003) (quoting applicable language from *Harrison* and ***rejecting*** defendant's arguments that (1) "its certified price estimates cannot be fraudulent because estimates are inherently subjective"; and (2) "it is impossible for the Government to prove that Pratt's certified 'Best Estimates' were false, given the 'vague' and 'ambiguous' nature of the terms" because "[t]he Government . . . asserts both that Pratt knew of no facts to substantiate its 'best estimate' and that it actually knew of facts that would preclude such an opinion").

14. Although Defendants do not raise Rule 9(b) as a basis to dismiss the FCA cause of action, it is well established that "[a] complaint under the False Claims Act must meet the heightened pleading standard of Rule 9(b), which states '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009); *see also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002) (noting "it was 'well settled' and 'self-evident' that the False Claims Act is 'a fraud statute' for the purposes of Rule 9(b)") (citation omitted). Therefore, the undersigned feels it is incumbent upon the Court to briefly undertake this analysis.

15. "A False Claims Act complaint satisfies Rule 9(b) if it sets forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the

13

defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper*, 588 F.3d at 1324 (internal quotation marks and citations omitted). Here, the FCA cause of action specified in the complaint (Paragraphs 23 through 25 of Count II of the Amended Complaint)—which is the subject matter of the Motion—satisfies Rule 9(b). The United States has set forth facts as to the time, place, and substance of the alleged fraud—Defendants' August 11, 2009 Letter. (*See* Doc. 12, ¶¶ 23-25 & Ex. C.)

## **CONCLUSION**

In light of the foregoing, the undersigned **RECOMMENDS** that the motion (Doc. 38) be **DENIED**.

**DONE** this the 1st day of September, 2010.

s/ WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days [3] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[3]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED. R. CIV. P. 72(b)(2).